Robert Kleinman
KLEINMAN LAW FIRM, PLLC
404 W. 7TH STREET
Austin, Texas 78701
Telephone: (512) 299-5329
Facsimile: (512) 628-3390

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES BARTON BOLLFRASS,<br><br>                             Plaintiff,<br><br>                v.<br><br>WARNER MUSIC GROUP CORP.,<br>                             Defendant. | 1:12-cv-06648-LLS |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AND IN OPPOSITION TO
DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEY'S FEES**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………………...ii

STATEMENT OF FACTS…………………………………………………………………….….1

LEGAL ARGUMENT…………………………………………………………………………….6

   I.    DEFENDANT'S MOTION TO DISMISS SHOULD NOT BE GRANTED
BECAUSE EXOGENESIS: SYMPHONY IS SUBSTANTIALLY SIMILAR TO
COPYRIGHTABLE ELEMENTS OF PANSPERMIA/EXOGENESIS……………........6

        A.  Legal Standards……………………………………………………………………6

        B.  "Exogenesis: Symphony" Appropriates *Exogenesis:Panspermia's* Original
Retelling of the Genesis Creation Myth………………………………………….....8

        C.  "Exogenesis: Symphony" Appropriates the Original Artistic Combination and
Integration of Thematic and Narrative Elements from *Exogenesis:Panspermia*..10

   II.   DEFENDANT IS NOT ENTITLED TO ATTORNEYS' FEES BECAUSE
BOLLFRASS'S CLAIM IS NOT OBJECTIVELY UNREASONABLE……………….12

CONCLUSION……………………………………………………………………………....…14

TABLE OF AUTHORITIES

Cases

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009)……………………………………………………………….6

*Bell Art. Corp. v. Twombly*,
　　550 U.S. 544 (2007)………………………………………………………………..6

*Boisson v. Banian, Ltd*,
　　273 F.3d 262 (2nd Cir. 2001)……………………………………………………….7

*Cabell v. Sony Pictures Entm't.*,
　　97 U.S.P.Q.2d 1508 (S.D.N.Y. 2011)……………………………………………12

*Canal+ Image UK Ltd. v. Lutvak*,
　　773 F. Supp. 2d 419 (S.D.N.Y. 2011)…………………………………………...8, 10

*Dickerson v. Mut. of Am.*,
　　703 F.Supp.2d 283 (S.D.N.Y. 2010)……………………………………………...6

*Durham Indus., Inc. v. Tomy Corp.*,
　　630 F.2d 905 (2nd Cir. 1980)……………………………………………………….7

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
　　499 U.S. 340 (1991)……………………………………………………………..8

*Fogerty v. Fantasy, Inc.*,
　　510 U.S. 517, 534 (1994)………………………………………………………...12

*Hamil America, Inc. v. GFI*,
　　193 F.3d 92 (2nd Cir.1999)………………………………………………………...8

*Hoehling v. Universal City Studios, Inc.*,
　　618 F.2d 972 (2nd Cir. 1980)……………………………………………………….6

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*,
　　820 F. Supp. 2d 569 (S.D.N.Y. 2011)…………………………………………...12

*Knitwaves, Inc. v. Lollytogs Ltd.*,
　　71 F.3d 996  (2nd Cir. 1995)……………………………………………………….8

*Muller v. Twentieth Century Fox Film Corp.*,
　　794 F. Supp. 2d 429  (S.D.N.Y. 2011)…………………………………………….7

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
　　602 F.3d 57 (2nd Cir. 2010)…………………………….………………….6, 8, 10

*Porto v. Guirgis*,
    659 F. Supp. 2d 597 (S.D.N.Y. 2009)……………………………………………...14

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*,
    338 F.3d 127 (2nd Cir. 2003)……………………………………………………10, 11

*Walker v. Time Life Films, Inc.*,
    784 F.2d 44 (2nd Cir. 1986)……………………………………………………….7

*Warner Bros. Inc. v. Am. Broad. Cos.*,
    720 F.2d 231 (2nd Cir. 1983)……………………………………………………7

*Yurman Design, Inc. v. PAJ, Inc.*,
    262 F.3d 101 (2nd Cir. 2001)…………………………………………………..7, 8, 10

<u>Statutes</u>
17 U.S.C.
    § 102………………………………………………………………………………7
    § 505…………………………………………………………………...12, 13, 14

Charles Bollfrass ("Bollfrass") respectfully submits this Memorandum of Law in opposition to Warner Music Group Corp.'s ("Warner") Motion to Dismiss his Complaint and in opposition to Warner's motion for an award of costs and attorney's fees

## STATEMENT OF FACTS

Bollfrass is the author and copyright holder of a screenplay he wrote in 1999 entitled *Panspermia/ExoGenesis*. Complaint ¶ 5. In late 2005 Bollfrass contacted three popular music groups to score this screenplay. One of these bands was Muse, and in early 2006 Bollfrass corresponded directly with Muse and/or its managers about Muse scoring the soundtrack.

The *Panspermia/ExoGenesis* screenplay tells a science-fiction story about the impending destruction of Earth through human technological excesses. In the end, the only hope for humanity's continued existence is for the main characters, Atom and Eev, to escape Earth and repopulate the species on another planet.

Bollfrass later put together large production packets for the purpose of attracting distribution, investment, and talent during the production phase. These packets were extensive and included a copy of the screenplay, storyboards, artwork, production design, wardrobe, budget and sound design. The packets also listed retained talent such as well-known actors, cinematographers, designers and special effects experts.

Once the necessary talent and key production staff positions had been secured, Bollfrass approached the management of a number of well-known rock bands to provide the score for the film's self-described "sci-fi rock opera" theme. One such band was Muse which was sent a production packet along with a cover letter describing Bollfrass' goal of having a single band do the entire soundtrack for the film. Muse declined but three years later in 2009 released an album containing a three-part "rock symphony" entitled "Exogenesis: Symphony" which tells the story

1

of the impending destruction of Earth through human technological excesses where the only hope for humanity's continued existence rests on the shoulders of astronauts who are sent to repopulate the species on other planets.

Panspermia and Exogenesis are theories about the origin of life on Earth. These are secular theories which propose that terrestrial life has an extraterrestrial origin. The proposed mechanisms vary but one common version of these theories holds that extraterrestrial microorganisms may have been deposited on Earth by meteorites. *See* Wikipedia, *Panspermia*, http://en.wikipedia.org/wiki/Panspermia (January 10, 2013, 11:54 EST). Bollfrass' screenplay borrows the idea that life on Earth has an extraterrestrial origin from these well-known secular theories but modifies and adds to the idea in a number of unique and original ways.

First, and perhaps most notably, the explanation for the origin of terrestrial life contained in Bollfrass' screenplay is not secular. There are a number of indications throughout the screenplay that the main character Atom was specifically created by God. Indeed, the very first scene of the screenplay shows several identical copies of Atom running along a littered landscape while a narrator, "sounding old and wise," speaks a number of lines that are recognizable as the words of God from the Genesis creation myth. *Defendant's Exhibit A* P003-P004. Variations on this scene recur throughout the screenplay. One early variation shows what appears to be a prototype of Atom in a "metallic room" being tested for "durability." As the voice of God continues to recite lines from the Genesis creation myth, the prototype is destroyed, the room is cleaned and sterilized and the process repeats with a new prototype. *Id*. at P007-P008.

Though singer and primary songwriter of Muse, Matt Bellamy claims that "Exogenesis: Symphony" "looks at the concept of 'panspermia'" it is notable that the song contains the very

2

same religious element as Bollfrass' screenplay. *Defendant's Motion* 7. The creation scenes from Bollfrass' screenplay are aptly and economically described by the opening lines of "Exogenesis: Symphony":

> Aping my soul
> You stole my overture
> Trapped in God's program
> Oh I can't escape

*Id.* at 5. In Bollfrass' creation scenes, identical copies of Atom are repeatedly created and destroyed with each new prototype *aping* the appearance, form and function of the preceding one. These prototypes are trapped in God's creation program. This retelling of the Genesis creation myth as something of an industrial process where multiple copies of the first human are created, tested and then violently destroyed is wholly unique to Bollfrass' screenplay and entirely foreign to the concept of panspermia from which Bellamy claims to have drawn his inspiration.

Another key feature of Bollfrass' screenplay which is shared by "Exogenesis: Symphony" is the idea of planetary destruction through technological excess. One of the major plotlines of the screenplay involves an unscrupulous electrical company destroying the planet. In the first variation on this theme, a "Polar Power Plant" is attempting to tap in to the planet's magnetic field in order to satisfy the population's voracious appetite for electricity. Ultimately the project fails and destroys the planet. *Defendant's Exhibit A* P058-P062, P108-P109. The same theme is present in "Exogenesis: Symphony." Matt Bellamy makes it clear that that the story of "Exogenesis: Symphony" is one of planetary destruction when he explains that "humanity is coming to an and" and the only hope is to "spread humanity to another planet." *Defendant's Motion* 7. Further, as in Bollfrass' screenplay, the cause of the destruction is plainly man-made. Part 2 of "Exogenesis: Symphony", which is about "sending … astronauts to find

3

and populate other planets" describes the astronauts as having to "wade through toxic clouds" on their way out of the planet's atmosphere. *Id.* at 6-7. This suggests some form of pollution caused by human activity since "unless humanity can change it will happen all over again." *Id.* at 7.

This leads to yet another important common theme between the two works: the cyclical nature of history and the power of humanity to break the cycle. In Bollfrass' screenplay, the audience is initially led to believe that the first planet destroyed by the electrical company is Earth. But as the destruction is taking place a special-effects sequence zooms out from the surface of the planet allowing the audience to view if from space and to realize that the planet was in fact Jupiter. *Defendant's Exhibit A* P060-P063. The story then resumes millennia later on Earth just as the human race is achieving the same level of technological advancement as the audience had just witnessed on Jupiter. And once again humanity is on the verge of destroying a planet as a result of greed and shortsightedness. The same story element is present in "Exogenesis: Symphony" where humanity eventually realizes that the destruction of its home planet and its need to colonize other planet to ensure its survival "is just one big cycle." *Defendant's Motion* 7.

This similarity goes deep. In both works, the cyclical nature of history is initially portrayed as a matter of fate insofar as the destruction of the planet is unavoidable. But both works also recognize the power of humanity to break the cycle and escape its fate. In Bollfrass' screenplay, Atom receives a message on Jupiter in his dream to "lead the people" and save them from their own destruction. He runs for president in an attempt to save the people and his campaign consumes a significant part of the first half of the screenplay. *Defendant's Exhibit A* P002-P060. In "Exogenesis: Symphony" the power of humanity to change its fate and break the

4

cycle of history is even more explicit. Matt Bellamy explains that Part 3 is partly about the realization that "unless humanity can change it will happen all over again." *Defendant's Motion* 7. The lyrics to Part 3 clearly convey this idea:

> Just let us start it over again
> And we'll be good
> This time we'll get it right, get it right
> It's our last chance to forgive ourselves

*Id*. at 6.

Further, while both works contain the idea that humanity has the power to save itself from its own destruction, humanity in fact fails to save itself in both works and its last hope of avoiding extinction lies in the hands of a kind of messianic figure. In the second half of Bollfrass' screenplay where the Earth is on the verge of being destroyed by the second iteration of the Polar Power Plant, Atom manages to escape from the planet with his love interest Eev on a pod he had previously built. *Defendant's Exhibit A* P096-P098. A comparison of the pod to Noah's Ark make it clear that Atom and Eev are meant to save the human race from extinction through procreation and repopulation of the species. *Id.* at P099. And once again the very same theme is present in "Exogenesis: Symphony" where humanity's last hopes are placed on an unnamed savior to "rise above the crowds" and leave the Earth's atmosphere ("Breach the outer sphere / The edge of all our fears") to "spread, our codes to the stars [and] rescue us all." *Defendant's Motion* 6.

5

**LEGAL ARGUMENT**

**I. DEFENDANT'S MOTION TO DISMISS SHOULD NOT BE GRANTED BECAUSE EXOGENESIS: SYMPHONY IS SUBSTANTIALLY SIMILAR TO COPYRIGHTABLE ELEMENTS OF PANSPERMIA/EXOGENESIS**

**A. Legal Standards**

"Courts ruling on motions to dismiss must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Dickerson v. Mut. of Am.,* 703 F.Supp.2d 283, 290 (S.D.N.Y. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Art. Corp. v. Twombly*, 550 U.S. 544 at 570 (2007).

"To prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." *See Hamil America, Inc. v. GFI,* 193 F.3d 92, 98 (2nd Cir.1999). To establish infringement, the copyright owner must demonstrate that "(1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." *Id*. at 99.

Because "[t]he determination of the extent of similarity that will constitute a *substantial*, and hence infringing, similarity presents one of the most difficult questions in copyright law … questions of non-infringement have traditionally been reserved for the trier of fact." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57, 63 (2nd Cir. 2010). Indeed, dispositive rulings on the merits have "traditionally been frowned upon in copyright litigation." *Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 977 (2nd Cir. 1980). Rather, "[t]he

question of infringement is generally resolved by the fact-finder's prediction of the probable reaction of a hypothetical "ordinary observer." *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 911 (2nd Cir. 1980).

None of this is to suggest, however, that a motion to dismiss is never appropriate in a copyright infringement case. In certain narrow circumstances, dismissal may be appropriate "either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Warner Bros. Inc. v. Am. Broad. Cos.,* 720 F.2d 231, 240 (2nd Cir. 1983) (internal quotation marks and emphasis omitted).

Copyright law protects "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). But "[s]imply because a work is copyrighted does not mean every element of that work is protected." *Boisson v. Banian, Ltd*, 273 F.3d 262, 268 (2nd Cir. 2001). Courts have held, for example, that "stock themes" or "scènes à faire," are not protectable. *Muller v. Twentieth Century Fox Film Corp.,* 794 F. Supp. 2d 429, 440 (S.D.N.Y. 2011)(internal quotes and citations omitted). Stock themes are "themes that are commonly linked to a particular genre…. For example, the familiar figure of the Irish cop is a stock theme of police fiction." *Id*. Scènes à faire "are those elements of a work that necessarily result from the choice of a setting or situation." *Id.* "Depictions of drunks, prostitutes, rodents, and abandoned cars" are unprotectable scènes à faire of a police novel set in the South Bronx. *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 50 (2nd Cir. 1986).

Nevertheless, copyright law does "protect a combination of elements that are unoriginal in themselves." *Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 109 (2nd Cir. 2001). Since "all creative works draw on the common wellspring that is the public domain, copyright protection

does not extend only to new forms of expression but also, and more commonly, to assembling old forms in original ways." *Canal+ Image UK Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 429 (S.D.N.Y. 2011)(internal quotes and citations omitted). Even where a work consists of a combination of unprotectable elements, "protection extends to choices of selection and arrangement, so long as they are made independently by the [author] and entail a minimal degree of creativity." *Id.* In other words, where a work consists in an original combination of unprotectable elements such as stock themes, scènes à faire, or other preexisting elements, the *combination* is itself a protectable element of the work. See *id.* at 112.

When a court considering a motion to dismiss reaches the question of substantial similarity, it applies the "ordinary observer" test in which it asks whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Gaito*, 602 F.3d at 66. In other words, two works are substantially similar just in case an "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." *Yurman Design*, 262 F.3d at 111. But the fact-finder is not meant to apply this test to each separable element of the copyrighted work and then add up the number of such elements shared by the allegedly infringing work. Rather, "the fact-finder must examine the works for their total concept and feel." *Hamil America,* 193 F.3d at 102. "Differences in detail do little to lessen a viewer's overwhelming impression that the defendant's products are appropriations." *Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1004 (2nd Cir. 1995).

**B. "Exogenesis: Symphony" Appropriates *Exogenesis:Panspermia's* Original Retelling of the Genesis Creation Myth.**

"[O]riginality is 'the *sine qua non* of copyright,' " *Feist Publ'ns, Inc. v. Rural Tel. Serv.*

8

*Co.*, 499 U.S. 340, 345 (1991).  Granted that not all aspects of a copyrightable work are protected, original contributions by the author are.  *Panspermia/Exogenesis* is an original literary work that contains a unique and wholly original reconceptualization and retelling of the Genesis creation myth.  This is a protectable element of the work which was unlawfully appropriated by "Exogenesis: Symphony."

  Bollfrass' retelling of the Genesis creation myth is contained in a series of dream-scenes throughout the screenplay.  In a typical such scene, Atom is seen alone in a metallic room being inspected and prodded by a robotic arm with scientific instruments.  Atom is eventually destroyed by the machine, the room is cleaned and a new copy of Atom appears.  Throughout the scene the voice of God can be heard reciting variations on lines from Genesis.  *Defendant's Exhibit A* P007-P009.  What the audience sees in these dream-scenes is the creation of man through a kind of industrial process.  Multiple copies of Atom are repeatedly created and destroyed with each new prototype *aping* the appearance, form and function of the preceding one.  Each succeeding copy is then, studied, tested and destroyed as part of their "durability testing."  *Id*. at P009.  In a later scene, as the robotic arm once again attempts to kill Atom as part of his durability testing, Atom fights back.  He has been trapped in this program of creation and destruction and uses the "cutting beam" shooting out of the robotic arm to cut a hole in the wall of the room so that he can escape.  *Id.* at P054-P055.

  The idea that God created man is obviously not a copyrightable element of Bollfrass' screenplay.  But Bollfrass' the unique variation and original rendition of the Genesis creation myth is protectable and have been appropriated by "Exogenesis: Symphony" where the lyrics of Part 1 aptly and economically describe Bollfrass's original vision:

> Aping my soul
> You stole my overture

9

>     Trapped in God's program
>     Oh I can't escape

*Id.* at 5.  Warner's motion to dismiss should not be granted because an average lay observer would recognize "Exogenesis: Symphony" "as having been appropriated from the copyrighted work."  *Gaito*, 602 F.3d at 66.

### C. "Exogenesis: Symphony" Appropriates the Original Artistic Combination and Integration of Thematic and Narrative Elements from *Exogenesis:Panspermia.*

Copyright law "protect[s] a combination of elements that are unoriginal in themselves." *Yurman Design, Inc,* 262 F.3d at 109.  All artistic creations "draw on the common wellspring that is the public domain" but are not for that reason unprotected by copyright law.  *Canal+ Image UK Ltd.*, 773 F. Supp. 2d 4at 429.  In particular, the copyright law commonly protects "assembling old forms in original ways." *Id*.

In *Yurman Design*, for example, the Second Circuit upheld a jury verdict finding copyright infringement of the plaintiff's "twisted cable jewelry designs" and rejected the defendant's argument that plaintiff's design was an unprotectable collection of common elements in the public domain.  The Court acknowledged that plaintiff's designs were combined various unprotected ideas:  "using cable design (which is in the public domain), with gemstones (also in the public domain), in one or more combinations (also in the public domain.)" *Yurman Design, Inc,* 262 F.3d at 112.  But the Court explained that the plaintiff's designs were protected nevertheless because they were "original combinations of unprotectable elements." *Id*.

Likewise, Bollfrass' screenplay undeniably incorporates a number of familiar themes and narrative tropes.  In isolation, each of these elements may be unprotected.  But "infringement analysis is not *simply* a matter of ascertaining similarity between components viewed in isolation." *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc*., 338 F.3d 127, 134

(2nd Cir. 2003). In certain cases, the author's original contribution is the selection and contribution of pre-existing and unprotected elements. *Id.* at 130-131. Among Bollfrass' protected artistic contributions is the original selection and combination of the following elements.

First, Bollfrass begins with inspiration from Panspermia and Exogenesis which are secular theories about the extraterrestrial origins of life on Earth. Second, Bollfrass departs from a key aspect of these theories by incorporating a religious element to the story. In the screenplay, human life on earth originates extraterrestrialy, but it is created originally by God. Third, Bollfrass adds into the mix the unrelated idea of planetary destruction as a result of technological excess. This is a familiar idea but it has nothing to do with Panspermia or religious theories about the divine creation of man. The combination of these elements is wholly original to Bollfrass. Fourth, the screenplay includes the idea of the cyclical nature of history: humanity's destruction of its home planet due to technological excess is something that has happened before and will likely happen again. This is connected to a fifth common element incorporated by Bollfrass: the recurrence of planetary destruction at human hands is not an accident or a historical contingency. Rather, humanity's short-sightedness resulting in self-destruction is something that is *fated* to happen. Sixth, though humanity is fated to destroy its home planet, Bollfrass adds the familiar idea that humanity has the power to overcome its fate and avoid the destruction. Seventh, with humanity failing to exercise its power to avoid its fate, the only hope remaining to save humanity from extinction is a kind of messianic figure. And finally, eighth, the particular means by which this messianic figure can save humanity is by repopulating the species on a new planet.

Many of these elements are common and familiar and many be unprotected by copyright law when viewed in isolation.  But it is the unique and original combination of these previously unrelated elements that that is protected in Bollfrass' screenplay.  Since all of these elements are also present in "Exogenesis: Symphony" to some degree or another, any average and lay observer would recognize it as having appropriated this protectable combination of elements from *Panspermia/Exogenesis*.

## II. WARNER IS NOT ENTITLED TO ATTORNEYS' FEES BECAUSE BOLLFRASS'S CLAIM IS NOT OBJECTIVELY UNREASONABLE

For the reasons discussed above, Bollfrass' claims are not objectively unreasonable.  Accordingly, it would be inappropriate for this Court to invoke its discretion and order that Bollfrass pay Warner's attorney's fees under 17 U.S.C. §505.

Attorney's fees may be awarded against a plaintiff under §505 only if the claim is "clearly without merit or otherwise patently devoid of legal or factual basis."  *Cabell v. Sony Pictures Entm't.*, 97 U.S.P.Q.2d 1508, 1509 (S.D.N.Y. 2011).  But a claim that is dismissed on a 12(b)(6) motion is not *for that reason* objectively unreasonable.  *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.,* 820 F. Supp. 2d 569, 573 (S.D.N.Y. 2011)(explaining that "[t]he grant of a motion to dismiss does not in itself render a claim unreasonable.")  "In determining whether such an award is appropriate, the court should consider frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case)."  *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 (1994)

Warner has provided no compelling reason for its assertion that Bollfrass' claim is objectively unreasonable.  Much of Warner's argument here is simply a repetition of its previous conclusions that *Panspermia/ExoGenesis* and "Exogenesis: Symphony" are not substantially similar with respect to the protected elements of the former.  For the reasons discussed above,

this is wrong. Warner fails to acknowledge the originality and consequent copyrightability of Bollfrass' unique industrial-themed retelling of the Genesis creation myth. Warner also fails to consider that part of what makes Bollfrass' screenplay copyrightable is the original way in which he *combines* various familiar but previously unrelated thematic and narrative elements.

But however this Court rules on these questions concerning what is and is not protectable in Bollfrass' screenplay, this has little bearing on the "objective reasonability" of his claim. Whether a reasonable fact-finder could find that the two works are substantially similar with respect to protected elements of the screenplay is the dispositive question for ruling on the 12(b)(6) motion to dismiss. But it is not the dispositive question for ruling on Warner's request for discretionary attorney's fees under 17 U.S.C. § 505. By simply repeating its conclusions about the alleged dissimilarity between the works, Warner fails to provide any compelling reason for why this Court should find Bollfrass' claim objectively unreasonable and exercise its discretion to order payment of attorney's fees.

Warner attempts to buttress its argument for why it should receive attorney's fees by speculating about Bollfrass' motives in bringing this lawsuit. Warner speculates that Bollfrass waited three years from the release of 'Exogenesis: Symphony" to bring his lawsuit because he wanted attention. Apparently Muse's follow-up album to *The Resistance* was released about a month after Bollfrass complaint was originally filed in August 2012. Warner believes that Bollfrass "hoped to free ride on [the promotion for Muse's new album] for his own benefit." *Defendant's Motion* 25. But Warner does not explain why Bollfrass should want that kind of attention in the first place. There is no indication anywhere in the record that Bollfrass is in a line of work where his career would be helped by a reputation for litigiousness against powerful players in the entertainment industry. There is, therefore, no evidence to support Warner's self-

13

serving speculation about Bollfrass' motives. The more likely explanation of Bollfrass' motive in bringing this lawsuit is that he feels his legal rights have been violated and he wants them vindicated.

Finally, Warner suggests that attorney's fees are "especially warranted here because Plaintiff had already been put on notice of the infirmity of his claims before the Complaint was filed." *Id*. at 26. Warner here is referring to an exchange of correspondence between Warner's and Bollfrass' counsel prior to commencement of the suit. Warner's counsel unsurprisingly opined that Bollfrass had no case and that he should drop the case. But surely Warner does not mean to suggest that litigants who do not take advice from opposing counsel are thereby opening themselves up to having to pay their opponent's attorney's fees. The only authority Warner cites to support this particular argument is easily distinguishable. In *Porto v. Guirgis*, 659 F. Supp. 2d 597 (S.D.N.Y. 2009), the Court awarded attorney's fees to the prevailing defendant because, among other things, the plaintiff had been warned *by his own counsel* that he did not have a colorable copyright infringement claim. The plaintiff fired his counsel and filed the lawsuit with a new lawyer.

In short, Warner has offered no compelling reason in support of its motion for attorney's fees under §505 and the motion should therefore be denied.

## **CONCLUSION**

For the foregoing reasons, Bollfrass respectfully requests that this Court deny Warner's motion to dismiss as well as Warner's motion for attorney's fees.

Respectfully submitted,

By: /s/ Robert B. Kleinman

Robert B. Kleinman
KLEINMAN LAW FIRM, PLLC
404 W. 7th Street
Austin, Texas 78701
Telephone: (512) 299-5329
Facsimile: (512) 628-3390

Kerry V. O'Brien
O'BRIEN LAW FIRM, PC
1011 Westlake Drive
Austin, Texas 78746
Telephone: (512) 410-1960
Facsimile: (512) 410-6171

**ATTORNEYS FOR PLAINTIFF CHARLES BARTON BOLLFRASS**

**CERTIFICATE OF SERVICE**

I certify that a true copy of this Memorandum In Opposition to Defendant's Motion to Dismiss and Award for Attorney's Fees has on this day been served upon Marc S. Reiner, attorney for Defendant Warner Music Group Corp. via the Court's ECF filing system.

By: /s/ Robert B. Kleinman

15